**STATE of Maine**

**v.**

**Donald G. BOILARD.**

Supreme Judicial Court of Maine.

June 17, 1976.

Roland A. Cole, County Atty., William Donahue, Dist. Atty., Alfred, Arthur Stilphen, Asst. Atty. Gen., Augusta, Keith Doyon, Law Student, for plaintiff.

Lowry & Platt by Stephen C. Lunt, Portland, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.*

ARCHIBALD, Justice.

The defendant, following a jury waived trial, has appealed his conviction for vio-

lating the provisions of 17 M.R.S.A. § 2103 (Breaking, Entering and Larceny).[1] We deny the appeal.

The appeal raises a single issue, namely, whether this record supports appellant's contention that his jury waiver had been unconstitutionally executed.

Rule 23(a), M.R.Crim.P., provides:

"The defendant with the approval of the court may waive a jury trial. The waiver must be in writing."

The appellant and his retained counsel had signed the following document which was filed with the Clerk on the day of the trial:

"STATE OF MAINE

YORK, ss.

STATE OF MAINE

V.

DONALD BOILLARD [sic]

SUPERIOR COURT
Criminal Docket No. 17–74

WAIVER OF JURY TRIAL
(Rule 23)

I, Donald Boilard, acknowledge that:

I am the person charged with the offense of B.E.L. in the above entitled and numbered action.

I have been furnished with a copy of the indictment.

I am fully aware of my right to have a jury trial.

I do not desire to have a jury trial and hereby waive my right to trial by jury.

I request that the pending charges be tried before the presiding Justice of this Court.

_/s/ Donald G. Boilard_
Defendant

Witness: _/s/ [Defense Counsel]_
Waiver approved by the Court.

_/s/ [Justice Presiding]_ "[2]

---

* Weatherbee, J. sat at argument and participated in consultation but died prior to preparation of opinion.

1. The maximum penalty for this crime, since it is not alleged to have been committed in the nighttime, was "a fine of not more than $1,000 or by imprisonment for not more than

6 years," thus elevating the gravity of the offense beyond that of a petty misdemeanor, although the right to trial by jury is not so limited in Maine. *See State v. Sklar*, 317 A.2d 160 (Me.1974).

2. It should be noted that this document is more explicit than that suggested by Form

The record is silent as to any interrogation of the appellant by the presiding Justice and does not even indicate when he approved the waiver, the only reference therein being the following:

"THE COURT: Do I understand, [Defense Counsel], that the Defendant is going to go jury waived in this case?

[Defense Counsel]: The form has just been given to the Clerk, if the Court please, signed by the Defendant.

[State's Counsel]: The State would call as its first witness . . . ."

At the completion of testimony the presiding Justice announced a finding of guilt despite the appellant's testimony that he participated with the actual thief only to obtain evidence of criminal conduct for the police. Our review of the transcript discloses abundant evidence to support the verdict of guilt.

Following the announcement of this verdict the record continues:

"THE COURT: Mr. Boilard, is there anything you wish to say to the Court before sentence is imposed?

[DEFENSE COUNSEL]: He was unable to hear the Court.

THE DEFENDANT: What is that, your Honor: What was the question?

THE COURT: Do you wish to say anything to this Court before sentence is imposed?

THE DEFENDANT: Yes. I can't understand this, really. I was doing only my job for the South Berwick Police Department. And I do have my right to have a jury trial. Something like that.

THE COURT: You understand, of course, that you have been—

THE DEFENDANT: I would like to waive it over.

THE COURT: That you waived a jury trial? You understand that you have done that?

THE DEFENDANT: Right.

THE COURT: And you have indicated to this Court that you have had a high school education. Is that correct?

THE DEFENDANT: Yes.

THE COURT: That means that you can read and write. Is that correct?

THE DEFENDANT: Yes.

THE COURT: So it is quite obvious that if you can, that you must have read the waiver before you signed it, did you not?

THE DEFENDANT: Um hm.

THE COURT: Well, is that all you wish to say to the Court at this time?

THE DEFENDANT: Yes."

In *State v. Chase*, 280 A.2d 550, 552, n. 1 (Me.1971), the Court approved Form 20 (*see* note 2, *supra*) and held that such a waiver, on being signed by a legally represented criminal defendant, and approved by the Court, fully satisfies the requirements of due process. On the facts before us the appellant was represented by counsel and did sign a document purporting to be a waiver of jury trial, which was approved by the Court. Therefore, nothing else appearing, *Chase* would be dispositive of this appeal.

■ A careful reading of *Chase*, however, leads to the conclusion that a direct appeal was denied only because, *on the particular facts of that case,* due process had been satisfied. We do not understand *Chase* to say that if facts in a particular record did indicate that a waiver of jury trial was *not* voluntarily and understand-

20 of the Appendix of Forms, M.R.Crim.P., which provides:
"John Doe, the defendant herein having been furnished a copy of the indictment in the

above entitled and numbered action and having been informed of his rights, waives trial by jury and requests that he be tried by the court."

ingly given, a direct appeal would not lie. Thus, we conclude that the appropriate remedy in cases such as this may be on direct appeal *or* by petition seeking post-conviction relief pursuant to 14 M.R.S.A. § 5502 et seq., depending upon the state of the record of each case.

■■ Additionally to the above quoted colloquy (and the executed and approved waiver), we have been furnished the record of a hearing on the issue of indigency held some two months prior to the trial and before a Justice other than the one who presided at the actual trial. From this record we are able to visualize a twenty-one year old with obviously defective hearing, who had difficulty in understanding the nature of the indigency hearing and whether or not he had actually "hired"[3] court-appointed counsel.

This record conjoined with that made at the time of sentencing (previously quoted) leaves the extent of the appellant's understanding of his situation confused. From the totality of these facts two inferences might be drawn by a fact finder, either one of which could be rational, namely, (1) that appellant, being able to read and write, voluntarily and intelligently signed the waiver, or (2) that the appellant misunderstood the legal import of the signed waiver, believing it necessary to sign it in order to preserve the right to a jury trial. His confusion after the trial is illustrated by his insistence, "I do have my right to have a jury trial," and "I would like to waive it over."

In *Chase* there was nothing *in the record* that would support an inference that the waiver there under consideration was not voluntarily and understandingly executed and thus may be distinguished on the facts from the case now before us.

We have no doubt that constitutional issues are involved with a waiver of trial by jury, which may be asserted under either the federal Constitution or the Constitution of Maine. U.S.Const., amends. VI and XIV; Constitution of Maine, art. 1, § 6; *State v. Sklar, supra; Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed. 2d. 491 (1968). The general rule is unquestioned that a waiver of a fundamental constitutional right is binding only if it is executed voluntarily and intelligently. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Equally unquestioned is the proposition that a direct appeal will lie for breach of a fundamental constitutional right, which would include a waiver of such right that is not knowingly, understandingly, or intelligently executed. *Dow v. State*, 275 A.2d 815 (Me.1971).

■ As we analyze the facts in this record, we are unable to say that there has been an unquestioned violation of appellant's constitutional right to a trial by jury. Thus, post-conviction relief would be the appropriate proceeding wherein the appellant might be able to show that the jury waiver was neither voluntarily nor intelligently executed.[4] We feel that this proce-

---

3. At this hearing the counsel who had been appointed to represent appellant in the District Court was present. A colloquy with the Justice then presiding nearly resulted in appellant's being found in contempt because of his attitude toward the Court. To avoid confusion and possibly save appellant from being held in contempt, counsel then agreed to represent the appellant and was considered to be "retained" at the time of the actual trial.

4. In order to guard against the denial of due process and in order to forestall subsequent collateral attacks arising under waivers of

trial by jury, we feel it appropriate to suggest to the trial court the recommendation of the American Bar Association Minimum Standards for Criminal Justice, Trial by Jury, § 1.2(b), which provides:
 "The court should not accept a waiver unless the defendant, *after being advised by the court of his right to trial by jury* personally waives his right to trial by jury, either in writing or in open court for the record." (Emphasis supplied.)
Rule 23, M.R.Crim.P., of course, requires that the jury waiver be in writing and bear the approval of the court but *by its own terms* does not require that the *record* demonstrate the

dure will be more effective in accomplishing the purposes for which Rule 23(a) was promulgated. As Professor Glassman noted in his commentary:

> "It is necessary to secure the approval of the court before the defendant may waive trial by jury. This provision *guarantees* that the court is satisfied that the defendant is knowingly and intelligently waiving his right with full awareness of the consequences; if there is any doubt as to this the court may refuse to approve the waiver." (Emphasis supplied.)

Glassman, Maine Practice, Rules of Criminal Procedure, Commentary 23.3.

The facts in the record before us illustrate the inadequacy of looking at a cold record in the context of appellate procedure to determine whether an appellant's constitutional rights have been in fact "guaranteed."

The entry is:

Appeal denied.

All Justices concurring.

elements of an intelligent and voluntary waiver.

We, therefore, recommend that a presiding Justice, before approving a waiver, should (1) advise a criminal defendant of his constitutional right to trial by jury; (2) explain the consequences incident to a waiver of that right; and (3) conduct such inquiry as is necessary to satisfy himself that the defendant understands the right to a jury trial. *See Jackson v. United States*, 262 A.2d 106 (D.C.App.1970).